UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: REPUBLIC AIRWAYS
HOLDINGS INC.

17-CV-3442 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This is a bankruptcy appeal involving commercial aircraft leases. At issue is a procedure called substantive consolidation. Substantive consolidation allows a bankruptcy court to pool the assets and liabilities of distinct corporate entities for the purposes of confirming a bankruptcy plan. The question here is whether the bankruptcy court improperly consolidated two debtors or discriminated against the appealing creditors. Because it did not, its decision is affirmed.

**I.    Background**

The appellants are two creditors: Wells Fargo Bank Northwest, N.A., and ALF VI, Inc. (collectively, "Residco"). The case concerns the debts of two companies: Republic Airways Holdings, Inc. and Shuttle America Corporation (collectively, "the Debtors"). Republic is a holding company, and is the parent of Shuttle America.

This appeal stems from seven leases of commercial aircraft to Shuttle America by Residco and its predecessors. Republic guaranteed the leases, meaning that it was on the hook for Shuttle America's obligations. Both Republic and Shuttle America filed for bankruptcy and rejected the leases. This triggered a damages provision in the leases. This provision calculates the amount of liquidated damages using a formula. Both debtors are potentially liable to pay these damages: Shuttle America is liable as the lessee, while Republic is liable as a guarantor. Residco claims total damages under the leases of about $57 million. (Dkt. No. 9 at 8.)

But there is a twist: While both Republic and Shuttle America are potentially liable for the breached leases, Residco's claim against Republic might be more valuable than its claim against Shuttle America. This is because there are unique defenses that Shuttle America might be able to assert based on New York contract law. Republic, however, made an unconditional guarantee of Shuttle America's obligations, and therefore may not be able to assert those defenses. According to Residco, its guarantee claim against Republic may be worth up to $50 million more than its lease claim against Shuttle America. (*See* Dkt. No. 8-2 at 7.)

The Debtors proposed a plan which substantively consolidated Republic and Shuttle America. The substantive consolidation combined all the assets and liabilities of the two companies and treated them as though they were merged. (*See* Dkt. No. 8-2 at 6.) It also eliminated all guarantee claims, including Residco's guarantee claims against Republic. (*See id.*) Essentially, it combined the two Debtors into one entity and required that all claims be asserted against that one entity. The plan estimated that, due to the benefits of substantive consolidation, unsecured creditors would be paid about forty-five cents on the dollar. (Dkt. No. 8-2 at 6.) Without substantive consolidation, unsecured creditors of Republic (the parent) would get as little as two cents on the dollar. (Dkt. No. 8-2 at 15.)[1]

Residco objected to substantive consolidation on the grounds that it eliminates Residco's valuable guarantee claims and leaves it with its less-valuable lease claims only. In response, the Debtors revised the plan to include a carve-out. The carve-out allowed Residco to opt out of substantive consolidation and have its claims treated as if consolidation had not occurred. This

---

[1] While the two cents figure is disputed, the Court adopts it for the sake of argument because it is the most favorable to Residco—*i.e.*, it creates the largest differential between Residco's recovery under substantive consolidation and Residco's recovery without substantive consolidation.

2

gave Residco two options: It could opt into substantive consolidation, lose its guarantee claims, and get forty-five cents on each dollar of its allowed lease claims. Or, it could opt out of substantive consolidation, keep both its lease and guarantee claims, and receive what it "would have recovered [on both its lease and guarantee claims] if the Plan Consolidation had not taken place." (Dkt. No. 8-2 at 26.) The carve-out also provided that, if Residco chose to opt out of substantive consolidation, the Debtors would bear the burden of proving "the estimated percentage distributions that would have been received" if substantive consolidation had not occurred—*i.e.*, in the counterfactual world in which Republic's and Shuttle America's debts had been administered separately with respect to all creditors. (*Id.*)

Residco still objected. The bankruptcy court overruled the objections and confirmed the plan. Residco appealed. This Court heard oral argument on February 16, 2018. Despite this appeal, the bankruptcy plan has largely been consummated, though the Debtors put money in reserve to satisfy any award to Residco.

## II. Standard of Review

A Bankruptcy Court's findings of fact are reviewed for clear error. *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). Questions of law and mixed questions of law and fact are generally subject to de novo review. *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 699 (S.D.N.Y. 2012); *see also U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, No. 15-1509, 2018 WL 1143822, at *5 (U.S. Mar. 5, 2018) ("[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work.").

## III. Discussion

Substantive consolidation does not originate in the Bankruptcy Code; rather, it is a product of a judicial gloss on the equitable power of bankruptcy courts. *See In re Augie/Restivo*

*Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988); *see generally In re Owens Corning*, 419 F.3d 195, 205 –07 (3d Cir. 2005) (reviewing the history of substantive consolidation). "Substantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *Augie/Restivo*, 860 F.2d at 518. Because of the dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent debtor, the Second Circuit has stressed that substantive consolidation should be used "sparingly." *Id.* (quoting *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966)).

Residco's arguments on appeal boil down to three points: (1) that the plan discriminates against Residco, (2) that the bankruptcy court misapplied the *Augie/Restivo* factors in deciding that substantive consolidation was appropriate, and (3) that Residco did not receive adequate disclosures. Importantly, Residco is not trying to unwind the entire plan or argue that substantive consolidation was inappropriate as to the other creditors. It merely argues that substantive consolidation was inappropriate as to Residco's claims.

### A. Does the Plan Discriminate Against Residco?

Residco's strongest argument is that the plan discriminates against it. Residco argues that, under the plan, Residco can reap the benefits of substantive consolidation only if it gives up its strong guarantee claim against Republic. Residco maintains that it is the only creditor that was forced to give up something in order to benefit from substantive consolidation, in violation of 11 U.S.C. § 1123(a)(4), which requires that similar claims be treated equally.

The core question is about the baseline for fair treatment and the distinction between benefit and harm. In other words, is Residco seeking to avoid being treated worse than other creditors, or is it seeking an added benefit beyond that afforded to other creditors?

4

To answer this question, we need to go back in time. Specifically, we need to back to when the substantive consolidation provision was proposed. At that time, the debtors and creditors were faced with two options: Option A was to treat Republic and Shuttle America as separate entities, preserve all guarantee claims, and endure a costly and inefficient claims process that would reduce the value of all creditors' claims. Option B was to substantively consolidate the two entities, eliminate all guarantee claims, and increase the value of the creditors' claims. If we accept the narrative that these were the only two options available, Residco's claim surely fails because the carve-out allows Residco to choose between those very two options.

But Residco argues that this a false dichotomy because there should have been an option C. In option C, the two Debtors are consolidated, but only *overlapping* guarantee claims are eliminated. In this scenario, non-overlapping guarantee claims—*i.e.*, where the amount claimed against the parent is different than the amount claimed against the subsidiary—are not eliminated. And in this scenario, Residco would both keep its guarantee claim *and* get the benefit of the higher recovery that accompanies substantive consolidation.

But this argument rests on a fallacy: there really was no option C. Residco's argument ignores the fact that there were numerous creditors holding potentially non-overlapping guarantee claims. Republic had guaranteed over 90 percent of the claims against its airline subsidiaries, and all of the aircraft leases had liquidated-damages provisions similar to the one giving rise to Residco's claim. (Dkt. No. 8-2 at 27.) Therefore, at the time the substantive consolidation provision was proposed, it appears that the only way substantive consolidation could work was to eliminate *all* guarantee claims, overlapping and not. Option C likely would not have worked because it would have been impossible to preserve non-overlapping guarantee

5

claims while also getting the benefits of substantive consolidation.[2] The only viable options were A and B, and the opt-out allows Residco to choose whichever one of the two it prefers. (*See* Dkt. No. 8-2 at 32 ("[Substantive consolidation] was proposed for the benefit of the estate given, among other things, the frequent use of guarantees by [Republic] and the efficiency and related cost savings under the Plan.").)

And even if it were possible to get the benefits of substantive consolidation while preserving Residco's guarantee claims, Residco's argument boils down to the notion that it should have gotten special treatment: whereas all creditors, including those holding non-overlapping guarantee claims, gave up their guarantee claims in order to get a higher recovery, Residco is taking the position that it should have been allowed to keep its guarantee claims and still get a higher recovery. But the Second Circuit has held that substantive consolidation does not have to benefit all creditors: all that is required is that it not harm creditors. *See In re Cont'l Vending Mach. Corp.*, 517 F.2d 997, 999, 1001 (2d Cir. 1975) (rejecting the argument that "it would be unfair and inequitable to permit [one class of creditors] to improve their position but to deny [another class of creditors] such improvement," and affirming substantive consolidation

---

[2] Granted, at the time the carve-out was inserted, all holders of non-overlapping guarantee claims had settled, leaving Residco as the only holder of such claims. But those creditors had settled under the expectation that all of their guarantee claims—including non-overlapping ones—would be eliminated. (*See* Dkt. No. 8-2 at 27 n.13 (citing cases), 32–33 (reciting facts).) It is possible that those creditors settled on the seemingly reasonable assumption that their guarantee claims were simply coextensive with their lease (or other underlying) claims—*i.e.*, that there were no (or few) true "non-overlapping" guarantee claims. Indeed, Residco's entire theory that it has some $50 million in guarantee claims arising from just $7 million in underlying lease claims is premised on a legal argument that this Court considers dubious: namely, that a liquidated damages provision in a lease agreement that is determined to be unenforceable—as against public policy—is nevertheless enforceable under a parent company's guarantee where the guarantee waives affirmative defenses. (*See* Dkt. No. 8-2 at 23–24 & n. 11.) That issue, however, is the subject of Residco's claims on the merits, and is not presented in this appeal.

because the second class of creditors got "exactly what it bargained for"). The Bankruptcy Code likewise requires that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This carve-out did just that.

Nor does Residco prevail on its argument that substantive consolidation was used "offensively" by the Debtors in order to circumvent Residco's potentially valuable guarantee claims. *See Owens Corning*, 419 F.3d at 215 ("[S]ubstantive consolidation should be used defensively to remedy identifiable harms, not offensively to achieve advantage over one group in the plan negotiation process.") First, the bankruptcy court found that substantive consolidation was not adopted with a specific creditor in mind or with an offensive purpose. (*See* Dkt. No. 8-2 at 32 ("[T]here is no suggestion that substantive consolidation here was directed at any one creditor.").) And second, the elimination of guarantees is a "typical" feature of substantive consolidation, and is not a nefarious mechanism that the Debtors selectively employed here. *In re Standard Brands Paint Co.*, 154 B.R. 563, 566 (Bankr. C.D. Cal. 1993). If any party acted opportunistically, the bankruptcy court noted, it was Residco, which waited until the last minute to lodge its challenge. (*See* Dkt. No. 8 at 32–34.)

Also important is that the bankruptcy court went to great lengths to minimize any unfairness to Residco. First, the carve-out allowed Residco to choose which option it preferred. Second, the carve-out allowed Residco to delay making a decision until the value of its lease and guarantee claims had been determined. And third, in the event that Residco chooses to opt out of substantive consolidation, it is the Debtors—not Residco—that would bear the burden of proof

on the counterfactual question of how much Residco would have recovered had substantive consolidation not occurred.

In sum, the bankruptcy court did not err in concluding that the plan does not discriminate against Residco.

### B. Did the Bankruptcy Court Err in Applying the *Augie/Restivo* Factors?

Residco also argues that the bankruptcy court misapplied the *Augie/Restivo* factors, which are critical to the determination of whether substantive consolidation is appropriate. As noted above, however, Residco does not seek to unwind the substantive consolidation as to other creditors; it argues only that substantive consolidation was inappropriate as to Residco. (*See* Dkt. No. 27 at 3–4.)

*Augie/Restivo* articulated two critical factors that indicate whether substantive consolidation will result in equitable treatment: (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, and (2) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. 860 F.2d at 518. Courts must also keep in mind that "[t]he sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors." *Id.* at 518.

Residco argues that the bankruptcy court misapplied these factors. However, given that the Court has concluded that the carve-out adequately negated any prejudice, Residco lacks standing to challenge the propriety of substantive consolidation because it suffered no harm from substantive consolidation. Put another way, if the Court were to hold that *Augie/Restivo* was not satisfied, all it would do is constrain Residco to one of the two options it already has under the carve-out. Residco certainly had standing to challenge the perceived differential treatment, but once the Court concluded that the carve-out negated any potential prejudice to Residco, it

likewise negated any harm based on misapplication of *Augie/Restivo* because Residco could simply opt out if it is dissatisfied with substantive consolidation.

In any event, the bankruptcy court committed no clear error in making its *Augie/Restivo* factual findings, nor did it commit legal error in applying the law to those facts. For the creditor reliance factor, the bankruptcy court made factual findings that the testimony of the CEO of Republic Airways was credible on this front, and that the testimony of the CEO of one of the Residco entities was not. (*See* Dkt. No. 8-2 at 15, 18.) For the entanglement factor, the bankruptcy court found, among other things, that the two entities operated as a single business under a single business plan; that they shared overhead, accounting, and back office functions; that they filed consolidated financial statements and tax returns; that there were significant intercompany obligations; and that there were significant overlaps in the creditor pools due to guarantees. (Dkt. No. 8-2 at 12–13.) Finally, the bankruptcy court found that the benefits of substantive consolidation outweigh any harm suffered by creditors, in large part because of the significant time and expense necessary to untangle the assets, and the attendant cost and risk of a prolonged bankruptcy. (*Id.* at 13.) The benefit to creditors conferred by substantive consolidation is borne out by Residco's own position that it would get two cents the dollar without substantive consolidation and forty-five cents on the dollar under substantive consolidation. *See In re Jennifer Convertibles, Inc.*, 447 B.R. 713, 723–24 (Bankr. S.D.N.Y. 2011) ("[I]t is well accepted that substantive consolidation is a flexible concept and that a principal question is whether creditors are adversely affected by consolidation and, if so, whether the adverse effects can be eliminated.")

### C. Was the Disclosure Inadequate?

Residco's last argument is that the carve-out was inserted without the disclosures required under 11 U.S.C. § 1127(c) and 11 U.S.C. § 1125. Residco made the same argument in

9

front of the bankruptcy court, which rejected it. The bankruptcy court reasoned that the carve-out could not have been proposed earlier because it was proposed specifically to address Residco's objection, and no other creditors had objected. More importantly, the bankruptcy court noted that Residco waited a long time to object to substantive consolidation even though substantive consolidation had been on the table for months. (*See* Dkt. No. 8 at 32–34.)

The Court finds no reversible error here, for the reasons discussed by the bankruptcy court. And even if the disclosure was inadequate at the time, the carve-out negates any prejudice to Residco for the reasons discussed above. Moreover, any harm based on lack of information is negated by the fact that the carve-out allows Residco to wait until the value of its lease and guarantee claims are determined, and then select whether to opt out of substantive consolidation.

### IV. Conclusion

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: March 28, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge